UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


FLORA ELLEN MINTON,                )
      Plaintiff,                )
                                   )
v.                                 )        No. 3:06-CV-320
                                   )        (Phillips)
HARRY SHULTZ, et al.,              )
      Defendants.             )


<u>MEMORANDUM AND ORDER</u>


      Plaintiff has brought this civil rights action against the Sheriff of Claiborne County and various officers alleging violation of her Fourth Amendment rights under the United States Constitution pursuant to 42 U.S.C. § 1983. Plaintiff also brings claims against the defendants under state law for the torts of false arrest, malicious harassment, assault and battery, intentional infliction of emotional distress, malicious prosecution, trespass, and outrageous conduct. Pending before the court are four motions for summary judgment filed by the defendants Claiborne County, Harry Shultz and Randy Richards, seeking dismissal of all claims against them: (1) by Harry Shultz, in his individual capacity [Docs. 21, 68]; (2) by Claiborne County [Docs. 15, 62]; (3) by Randy Richards, in his individual capacity [Docs. 18, 65]; and (4) by Claiborne County, Harry Shultz and Randy Richards [Doc. 57] to dismiss claims raised for the first time in plaintiff's amended complaint.

After viewing the record in the light most favorable to plaintiff, the court finds: (1) the motion for summary judgment filed by Harry Shultz, in his individual capacity, will be **GRANTED;** (2) the motion for summary judgment filed by Claiborne County, will be **GRANTED IN PART AND DENIED IN PART;** (3) the motion for summary judgment filed by Randy Richards, in his individual capacity, will be **GRANTED IN PART AND DENIED IN PART**; and (4) the motion filed by defendants to dismiss claims raised for the first time in plaintiff's amended complaint will be **GRANTED.**

## Statement of Facts

The facts, taken in a light most favorable to plaintiff, are as follows: On or about July 3, 2005, defendant Robert Chadwell, employed by the Claiborne County Sheriff's Department and acting under the color of law, conducted a knock and talk at the residence where plaintiff was a guest. Plaintiff avers that Officer Chadwell did not have a search warrant, nor did he receive permission to enter the residence. Plaintiff was asleep on the couch when she was awakened by Officer Chadwell, who ordered plaintiff to her feet and placed plaintiff's hand behind her back. Upon reaching the front door of the residence, Officer Chadwell placed plaintiff's other hand behind her back and handcuffed her. Officer Chadwell then proceeded to pull plaintiff by her handcuffs to an area outside of the residence where he told plaintiff to sit down. Plaintiff was told that she had been in a home containing a meth lab. Plaintiff was then escorted, upon the instruction of defendant Officer Randy Richards, to an area in the middle of the public roadway so that she could be "decontaminated."

2

The "decontamination area" consisted of two sheets, which were held by numerous male officers. The sheets only covered approximately one side of the area where the plaintiff was to be decontaminated. Upon instruction by Officer Richards, an unnamed officer removed plaintiff's clothing. Plaintiff begged for a female officer, but was ordered by the unnamed officer to close her eyes and forced to stand naked while being forcibly "hosed off" with cold water. As part of the "decontamination" a second unnamed officer then proceeded to pull plaintiff's naked legs apart and cleanse her inner thighs. This officer then turned the plaintiff around, repeating the same process to the backside of her naked, exposed body. The officer then proceeded to use a sheet to physically place his hands on the plaintiff's breasts and abdomen in an attempt to dry the plaintiff's body. Plaintiff was forced to endure this decontamination process while numerous male officers stood in the road where they could observe the plaintiff, handcuffed and naked, as she shook and shivered from cold, fear and humiliation.

Further details of the incident are provided in plaintiff's affidavit submitted in opposition to summary judgment:

> I fell asleep on the couch, and then I woke up to Officer Robert Chadwell screaming at me to get up and get out of the house. Officer Robert Chadwell then pulled my arm right upward, and then proceeded to pull me through the door and onto the porch. Officer Robert Chadwell then jerked my other arm up toward my shoulders, and placed the other handcuff on my wrist tightly. Officer Robert Chadwell was laughing at me while he was placing the handcuffs on my wrists. Officer Robert Chadwell then pulled me up the hill backwards by my handcuffs, and then placed me in the road beside a police car and made me sit down. Mayford Manning was sitting a few feet away from me at that time. I asked several officers what was going on, and they just kept laughing, and would not answer

3

my questions. Officer Randy Richards came around the side of the car where I was located, and I again asked what was going on, and at that time I was told that I was in a meth lab. I was then asked by an officer if they could search my vehicle, and I told them that they could search my vehicle. However, nothing was found in my vehicle.

At that point, an officer brought some type of fluorescent light and waved it over my body and Mayford Manning's body. I was then pulled up from the pavement and told by an officer that I was about to be "decontaminated." I then asked what "decontamination" was and proceeded to beg the officers to allow a female to "decontaminate" me, however, Officer Randy Richards told me that I did not have the right to be decontaminated by a female. I then begged the officers to allow me to undress myself, however, the officers refused to allow me to remove my own clothing.

At that time, I was standing in the middle of a two lane public road, and a man began to cut my clothing off of my handcuffed body. There were more men than I could count standing and watching as the male officers peeled my shirt off and then made me spread my legs so that my shorts and panties could be removed like a diaper. There were male officers on one side of me holding a sheet, however, there was nothing shielding the other side of my body, and there were also many males that were doing nothing but watching. After my clothes were cut off of my body, I was told to stand still, while handcuffed, and the officers hosed me off from the back of my head to the bottom of my feet. I was then told to turn around with my front side exposed, and with my hands still cuffed behind my back, I was forced to endure another hosing, starting at my hairline, and ending on my toes. I then observed Officer Randy Richards peering over the sheet, laughing at me for begging them to stop. Officer Randy Richards was giving the orders during the "decontamination."

I could not open my eyes because they were burning from the solution that I was sprayed with, and I was crying and begging the officers to stop and give me a sheet or something to cover my naked body. Finally, an EMS person told someone to get a sheet and told another individual to take the handcuffs off of my wrists. The handcuffs were removed, and I then felt hands over my breasts and my shoulders, and I then grabbed the sheet and wiped my eyes so that I could see who was touching

4

me, and then I wrapped the sheet around me, and was placed in the ambulance. . . . Further, I only observed one individual wearing gloves, however, no one was wearing any protective equipment or breathing devices. All charges against me regarding this incident were dismissed, and furthermore, to my knowledge, there were no meth components or meth found in the home at 1780 Blue Top Road.

Plaintiff has submitted the affidavit of Nancy Singleton, a volunteer with the Springdale Volunteer Fire Department, which was called to assist in a meth lab at 1780 Blue Top Road. Singleton states:

After arriving, my Chief, Bruce Myers, radioed in to offer a female to assist, and an officer advised that he did not need a female to assist. I observed an individual, whom I later found out was Flora Ellen Minton and "Rocky" Manning sitting on pavement in the middle of the road beside a police car. I approached an officer, whom I did not know, but later identified as Officer Randy Richards and asked if I could assist in the decontamination of [plaintiff] since I appeared to be the only female firefighter on duty present, and Officer Randy Richards' response was "no, this one's mine."

I was told by this officer, whom I later identified as Randy Richards, that my assistance was not needed, however, I did not understand why I was not allowed to assist in the decontamination. Further, this officer appeared to be in charge of the decontamination.

I witnessed [plaintiff] being decontaminated behind an ambulance that was placed in the roadway. [Plaintiff] was placed in the middle of the road and a sheet was held up by many male officers, who continued to watch the decontamination of [plaintiff]. This sheet only covered one side of the area when [plaintiff] was being decontaminated. The sides of the area where [plaintiff] was located was not covered by a sheet, but, rather, were only covered by the sides of the ambulance door. There were individuals standing outside of their residences who could visibly see [plaintiff] being decontaminated.

5

Once the decontamination process began, male officers cut [plaintiff's] clothing off of her body, she was not allowed to remove her own clothing. [Plaintiff] was then hosed off by male officers, while she screamed in terror. There was nothing about the decontamination that was appropriate and furthermore, it appeared to be very humiliating. The officers appeared to be having a good time during the decontamination. I was very upset by the way this decontamination was carried out. I remember being concerned to the point that I became fearful that the officers would turn on me next, or the other females on site. None of the individuals involved in the decontamination were wearing any type of protective devices, nor any type of breathing apparatus.

Defendants have a different account of the incident: Officer Chadwell performed a "knock and talk" and discovered a meth lab at the residence on 1780 Blue Top Road in Tazewell, Tennessee, on July 3, 2005. Claiborne County Sheriff's Department officer Robert Chadwell was certified, through specialized training, in clandestine laboratory seizures. Plaintiff was asleep in the home and was removed from the home. Once outside, she was informed that she had been in a home containing a clandestine methamphetamine lab. An ambulance was present to take plaintiff to the hospital. Before emergency medical personnel can safely attend to someone who has been exposed to meth, that individual must be decontaminated. Grant Lowe, a member of Tennessee's Meth Task Force, was present on the scene, but did not participate in the decontamination of plaintiff. However, Lowe stated that he is familiar with the decontamination process used and it is consistent with the specialized training that he received and it is consistent with the decontamination method used by many other law enforcement agencies.

6

## Summary Judgment Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

## Analysis

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law. *Romanski v. Detroit Entm't LLC,* 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim under § 1983, plaintiff must demonstrate two elements: (1) that she was deprived of a right secured by the Constitution or laws of the United States, and (2) that she was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County,* 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenshire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000).

Plaintiff alleges that defendants Shultz and Richards are each liable in their individual capacities under § 1983 for a violation of plaintiff's constitutional rights in connection with her detention and forced decontamination. Defendants Shultz and Richards argue that the doctrine of qualified immunity applies and shields them from liability for any alleged constitutional violations in this case.

**Qualified Immunity**

The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ewolski v. City of Brunswick,* 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  The United States Supreme Court has articulated a two-part test for determining whether a law enforcement officer is entitled to qualified immunity.  Under this test, district courts must:

> consider whether the facts alleged show the officer's conduct violated a constitutional right.  If the plaintiff can establish that a constitutional violation occurred, a court should ask "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.

*Lyons v. City of Xenia,* 417 F.3d 565, 571 (6th Cir. 2005) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Once defendants claim the affirmative defense of qualified immunity, the burden shifts to plaintiff to demonstrate that the defendants are not entitled to the defense. *Myers v. Potter,* 422 F.3d 347, 352 (6th Cir. 2005).  When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiff must (1) identify a clearly established right alleged to have been violated, and (2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995).

The key inquiry in determining whether a right was clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *Ewolski,* 287 F.3d at 503. For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Although the conduct in question need not have been previously held unlawful, the unlawfulness must be apparent in light of pre-existing law. *Id.* Officials are entitled to qualified immunity "when their decision was reasonable, even if mistaken." *Pray*, 49 F.3d at 1158.

The threshold issue is whether plaintiff has alleged a constitutional violation by Shultz and Richards. Plaintiff's amended complaint alleges a § 1983 claim based on violations of plaintiff's constitutional rights to privacy, substantive due process and the right to be free from unreasonable searches and seizures as a result of plaintiff's detention and decontamination. Although plaintiff contends that she should be allowed to proceed on multiple constitutional theories, it is well settled that "where a particular Amendment provides an explicit textural source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim. *Albright v. Oliver,* 510 U.S. 266, 273 (1994).

The gravamen of plaintiff's complaint focuses on her detention and the exposure of her body during the decontamination procedure. The Fourth Amendment preserves the right of citizens "to be secure in their persons . . . against unreasonable

searches and seizures." U.S. Const. Amend. IV. Allegations of unreasonable detention clearly come within the explicit "unreasonable seizures" language of the Fourth Amendment. Plaintiff's privacy claims are also best analyzed under the Fourth Amendment's guarantee of security in one's person against "unreasonable searches." Although some cases from other circuits have found protection in the liberty interest guaranteed by the Due Process Clause of the Fourteenth Amendment, the Sixth Circuit has found the privacy right against forced exposure of one's body to strangers of the opposite sex to be located in the Fourth Amendment. *Everson v. Michigan Dept of Corrections,* 391 F.3d 737, 757 n. 26 (6th Cir. 2004) (citing *Cornwell v. Dahlberg,* 963 F.2d 912, 916 (6th Cir. 1992); *Kent v. Johnson,* 821 F.2d 1220, 1226 (6th Cir. 1987).

Because the focus of this case is on the use of police powers in an emergency setting, the Fourth Amendment provides the most appropriate framework for analyzing plaintiff's constitutional claims, and plaintiff's substantive due process and privacy claims are subsumed within the more particularized protection of the Fourth Amendment. Plaintiff's allegations against the defendants can be broken down into (1) the decision to detain, (2) the decision to decontaminate, and (3) the execution of the decontamination procedure. The undisputed evidence reveals that Officers Chadwell and Richards of the Claiborne County Sheriff's Department were responsible for the decision to detain plaintiff, Officer Richards was responsible for the decision to decontaminate plaintiff, and officers of the Claiborne County Sheriff's Department were responsible for executing the decontamination procedure. Defendant Harry Shultz was, at all times material to plaintiff's complaint, the Sheriff of Claiborne County.

11

The individual defendants do not deny that plaintiff was detained or seized within the meaning of the Fourth Amendment. They contend, however, that there was no Fourth Amendment violation based upon the exigent circumstances exception to the warrant requirement. One of the situations that can give rise to exigent circumstances is "a risk of danger to the police or others." *United States v. Johnson,* 22 F.3d 674, 680 (6th Cir. 1994) (citing *Minnesota v. Olson,* 495 U.S. 91 (1990)). The "risk of danger" exigency also known as the emergency aid doctrine, is most frequently cited in cases where the government is acting in something other than a traditional law enforcement capacity. *United States v. Rohrig,* 98 F.3d 1506, 1516 (6th Cir. 1996).

The record reveals that plaintiff was found in a residence suspected of containing a meth lab, and decontamination was required before plaintiff could be transported by EMS personnel to the hospital for evaluation. Based upon these circumstances, Officers Chadwell and Richards had reason to believe that they were faced with a chemical hazard emergency. The uncontested facts also reveal that Officer Richards had probable cause to believe there was a biological emergency that required plaintiff to be decontaminated to protect the officers and EMS workers from a chemical threat. Thus, the court finds that Officer Chadwell's and Officer Richards' conduct in detaining and deciding to subject plaintiff to decontamination were objectively reasonable in light of the danger plaintiff presented to herself as well as to the officers, EMS workers and others if she was exposed to dangerous chemicals. Even if the officers were mistaken in their belief that plaintiff had been exposed to meth chemicals, the mistake was a reasonable one. *Saucier,* 533 U.S. at 206 (noting that in excessive force cases, qualified

12

immunity can apply in the event the mistaken belief was reasonable). Because the officers reasonably, even if mistakenly, believed that a decontamination procedure was necessary before plaintiff could be safely transported by EMS personnel, there was no constitutional violation. Accordingly, Officer Richards is entitled to qualified immunity for his actions in detaining plaintiff and directing that she undergo decontamination.

However, Officer Richards is not entitled to qualified immunity for his actions undertaken in the execution of the decontamination procedure. A review of the affidavits filed by plaintiff and Kathy Singleton reveal that the efforts made to protect plaintiff's privacy were virtually nonexistent. Not only was plaintiff exposed to the male decontamination officers, but she was exposed to numerous other male officers not involved in the decontamination procedure, and exposed to various neighbors who had come out of their residences to see what was going on. Plaintiff has presented sufficient evidence to show that Officer Richards violated her clearly established right to privacy and that a reasonable officer in the defendant's position should have known that his conduct was undertaken in violation of that right. Accordingly, Officer Richards is not entitled to qualified immunity for his actions during the execution of the decontamination procedure.

Sheriff Shultz did not take part in any aspect of plaintiff's detention and decontamination. He also did not direct any of the officers on the scene to effect a detention or decontamination. Officers can only be held liable for acts performed by their subordinates when "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that

13

a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Timberlake v. Benton*, 786 F.Supp. 676, 693 (M.D.Tenn. 1992) (quoting *Bellamy v. Bradley*, 729 F.3d 416, 421 (6th Cir. 1984)). Because Sheriff Shultz did not participate in either the detention, decision to decontaminate plaintiff, or the execution of the decontamination procedure, plaintiff has not shown that Sheriff Shultz violated her Fourth Amendment privacy rights. Accordingly, Sheriff Shultz is entitled to qualified immunity, and plaintiff's claims against Sheriff Shultz in his individual capacity will be **DISMISSED.**

**Claiborne County**

Claiborne County contends that it is entitled to summary judgment on plaintiff's Fourth Amendment claim because plaintiff cannot prove that a custom, policy or practice of Claiborne County was the moving force behind the alleged violations of plaintiff's constitutional rights.

A municipality cannot be held liable pursuant to § 1983 under a theory of *respondeat superior* for the actions of its employees. *Monell v. Dept of Soc. Servs. of New York City*, 436 U.S. 658, 691 (1978). For a municipality to be liable under § 1983, the local government's policy or custom must be the "moving force of the constitutional violation." *Polk County v. Dodson,* 454 U.S. 312, 326 (1982) (quoting *Monell*, 436 U.S. at 694). The inadequacy of police training may serve as the basis for § 1983 liability, but only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Cherrington v. Skeeter,* 344 F.3d 631, 646 (6th Cir. 2003 )

14

(quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)).  Only where a municipality's failure to train its employees, in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a "policy or custom" under § 1983.  *Id.*

The Sixth Circuit has recognized two situations in which inadequate training could be found to be the result of deliberate indifference: (1) failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction, and (2) failure to act in response to repeated complaints of constitutional violations by its officers.  *Cherrington,* 344 F.3d at 646.  Plaintiff contends that Claiborne County is liable under § 1983 because its failure to train its officers resulted in a policy of deliberate indifference to plaintiff's constitutional rights.  Specifically, plaintiff alleges a failure to train in the following areas: (1) how to conduct a decontamination procedure; and (2) appropriate privacy measures to be taken during a decontamination procedure.

Claiborne County has produced evidence that it had a decontamination procedure in place that conformed with state law requirements.  However, there is no evidence that the decontamination policy addressed the need for privacy, and the evidence of how the procedure was actually conducted is sufficient to raise an issue of fact for trial as to whether the training received by the officers was adequate.

A wet decontamination procedure, such as the one involved in this action, requires detainees to take off their clothes and to be washed off.  Such a procedure

15

necessarily implicates privacy issues. Because privacy concerns are foreseeable, a reasonable jury could find that a county that undertakes responsibility for conducting wet decontaminations must train its employees on how to address privacy concerns and that the failure to provide adequate privacy training amounts to deliberate indifference.

There is also evidence in this case from which a jury could find that the privacy training was inadequate. The detainee here was a woman, but no effort was made to address her concern for having a female decontamination officer, inadequate privacy screening was provided, male officers who were not involved in the decontamination procedure were milling around the decontamination area, and plaintiff was not shielded from the view of members of the public. These facts are sufficient to create an issue for trial on the adequacy of training provided by Claiborne County to its officers who were assigned to carry out this procedure. Since plaintiff's claims against Sheriff Shultz in his official capacity are the same as the suit against Claiborne County, Sheriff Shultz will be dismissed in his official capacity. *See Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (A suit against a government official in his official capacity is the same as a suit against the governmental entity).

**State Law Tort Claims Against Claiborne County**

In her complaint, plaintiff has alleged several claims arising under Tennessee state law including assault and battery, false imprisonment, trespass, intentional infliction

of emotional distress, and violations of plaintiff's rights guaranteed by the Tennessee Constitution.

Some of plaintiff's state law claims are governed by the Tennessee Governmental Tort Liability Act (TGTLA). Under the TGTLA, "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . . false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights [or] the institution of prosecution of any judicial or administrative proceeding, even if malicious or without probable cause . . . . " Tenn. Code Ann. §29-20-205. The exceptions listed in § 29-20-205 are the only torts for which immunity is not removed when an injury is proximately caused by a negligent act or omission of an employee within the scope of his employment. *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 84 (Tenn. 2001). As a result, in this case, Claiborne County is immune from suit for the causes of action listed in § 29-20-205. Accordingly, plaintiff's claims against Claiborne County for false imprisonment, trespass, and intentional infliction of emotional distress will be **DISMISSED** against Claiborne County**.**

17

In addition, § 29-20-205 of the TGTLA provides that immunity is retained when the injury arises out of "civil rights." This court construes "civil rights" under § 29-20-205 as including claims arising under the federal civil rights laws and the United States Constitution. *Hale v. Randolph,* 2004 WL 1854179 (E.D.Tenn. Jan. 30, 2004). Here, as in *Hale*, plaintiff's state law claims against Claiborne County clearly arise out of and directly flow from the allegations that the officers deprived plaintiff of her civil rights. Because plaintiff asserts her state law claims in the context of a civil rights case, her alleged injuries arise out of "civil rights" and Claiborne County is entitled to immunity under the TGTLA. This determination forms the basis for an alternative reason for the dismissal of plaintiff's claims of false imprisonment, trespass, and intentional infliction of emotional distress against Claiborne County.

Further, plaintiff's state law claims of assault and battery against Claiborne County will be **DISMISSED**, as plaintiff's alleged injuries related to these causes of action also arise out of civil rights. Accordingly, since Claiborne County is immune from suit regarding plaintiff's state law claims, those claims are properly brought against the officers in their respective individual capacities.

In her response, plaintiff concedes that she has not established sufficient admissible evidence against defendants Grant Lowe, Randy Bullen, and Don Allen to resist summary judgment. Accordingly, summary judgment will be **GRANTED** to these defendants and they will be dismissed from this action.

**State Law Tort Claims Against Officer Richards in his Individual Capacity**

      **Assault & Battery**.  Plaintiff alleges in her complaint that Officer Richards committed assault and battery.  An assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Lewis v. Metro Gen. Sess. Court for Nashville,* 949 S.W.2d 696, 703 (Tenn.App. 1997).  This definition of assault "requires an intentional act of creating a reasonable apprehension of imminent physical harm on the part of the plaintiff." *Id.*  A battery is the intentional, unlawful touching of a person or something intimately associated with that person.  *Id.*  Plaintiff has presented sufficient evidence to submit to a jury the issue of whether Officer Richards committed assault and battery by use of excessive force.  Plaintiff was forcibly hosed down in the middle of the roadway based on Officer Richards' orders.  Plaintiff was forced to endure males cutting her clothes off and touching her body, all of which occurred in the middle of the road with residents watching, and while officers were laughing.  A reasonable jury could find that the force used was excessive; therefore,  Officer's Richards motion for summary judgment on this claim will be denied.


      **False Imprisonment**.  Plaintiff alleges that Officer Richards falsely imprisoned her when she was detained for decontamination.  As stated above, Officer Richards' conduct in detaining and deciding to subject plaintiff to decontamination was objectively reasonable in light of the danger presented by the meth lab to which plaintiff had been exposed.  Accordingly, Officer Richards is entitled to summary judgment on this claim.

**Trespass**.  Plaintiff alleges that Officer Richards committed the tort of trespass based on his alleged "unlawful entry into, and search of the home where plaintiff was an invited guest."  In Tennessee, every trespass gives a right of recovery of, at least, nominal damages, and the injured party may also recover all consequential damages, as well as punitive damages in certain circumstances.

Even considering the facts in the light most favorable to plaintiff, Officer Richards did not violate her constitutional rights when he entered the residence without a warrant, because there is no need for a warrant when exigent circumstances demand immediate entry.  Federal courts hold that "when exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home. *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002).  Here, the officers reasonably believed the occupants of the residence were in danger because of the existence of a volatile meth lab.  Accordingly, the court finds, as a matter of law, that Officer Richards' entry into the residence was pursuant to exigent circumstances and summary judgment in his favor is appropriate.

**Intentional Infliction of Emotional Distress**.  Plaintiff alleges that Officer Richards "conspired to and did intentionally commit acts upon the plaintiff that inflicted emotional distress and caused plaintiff injuries and severe mental anguish."  The elements of intentional infliction of emotional distress are as follows: (1) defendant's conduct must be intentional or reckless; (2) defendant's conduct must be "so outrageous that it is not

20

tolerated by civilized society;" and (3) defendant's conduct must result in serious injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court's duty is to determine whether the defendant's conduct is so extreme and outrageous that recovery must be permitted. *Id.* Plaintiff has presented evidence that Officer Richards had other alternatives for the decontamination procedure. A female EMS worker was present, but was not allowed to assist in the decontamination. Further, it was not necessary to have male officers not involved in the decontamination watching and laughing at plaintiff while she was naked and being washed. Plaintiff could have removed her own clothing, however, she was denied that opportunity. Instead, Plaintiff had her clothing forcibly removed by a male officer. There is sufficient evidence from which a reasonable jury could conclude that the Officer Richards' behavior inflicted mental anguish on plaintiff.

**Negligence**. Plaintiff alleges that Officer Richards failed to follow policies and procedures in the decontamination of a meth lab, and Claiborne County failed to develop and implement proper policies and procedures in the decontamination process of a meth lab. Plaintiff has presented sufficient evidence from which a jury could find that Officer Richards failed to follow the County's policies and procedures in the decontamination of a meth lab. Accordingly, summary judgment will be denied on this count.

**Violation of Rights Guaranteed by the Tennessee Constitution**. Because Tennessee law does not recognize a private cause of action for violations of the Tennessee Constitution (*See Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996)), summary judgment will be granted to Officer Richards on this claim.

## Motion for Partial Dismissal of Claims

Defendants Claiborne County, Harry Shultz, and Randy Richards move to dismiss all claims in plaintiff's amended complaint that require proof of facts not alleged in the original complaint. Defendants aver that the original complaint does not allege the following facts: (1) the arrest of plaintiff; (2) the institution of criminal charges against her; (3) her jail incarceration; (4) any facts that would indicate a denial of equal protection; or (5) any facts alerting defendants that plaintiff believes she was harassed based upon her membership in a protected class. Therefore, defendants argue, any claims based upon such facts do not relate back, under Federal Rule of Civil Procedure 15(c) to the filing of the original complaint.[1] Consequently, such claims are time barred based on Tenn. Code Ann. § 28-3-104.

Plaintiff has responded in opposition, stating that she eluded to the fact that she was arrested, that criminal charges were instituted against her, and that she was incarcerated in her original complaint. Plaintiff concedes that her equal protection claim and claim for malicious harassment do not relate back to the original complaint.

Rule 15(c), Federal Rules of Civil Procedure, allows an amendment to a pleading to relate back to the date the original pleading was filed when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or

---

[1] Defendants do not contest plaintiff's right to pursue a false imprisonment claim to the extent she is alleging that her detention on the scene during her decontamination procedure constituted false imprisonment.

22

occurrence set forth in the original pleading." The United States court of Appeals for the Ninth Circuit has noted with respect to the relation back doctrine the following:

> The relation back doctrine of Rule 15(c) is a bar to the statute of limitations. In deciding whether an amendment to state a new claim against the original defendant is proper, the policies underlying the statute of limitations are implicated. Thus, the amendment of a complaint is proper if the original pleading put the defendant on notice of the "particular transaction or set of facts" that the plaintiff believes to have caused the complained of injury. Fairness to the defendant demands that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff.

*Percy v. San Francisco General Hosp.,* 841 F.2d 975 (1988).

In the instant case, the only claims stated in the original complaint allege constitutional and state law violations for the unlawful detention of plaintiff, and the execution of the decontamination procedure on July 3, 2005. Plaintiff does not allege that she was arrested, that criminal charges were instituted against her, that she was incarcerated in jail, that she was treated in such a way as to trigger an equal protection claim, or that she was harassed based on her membership in a protected class. Accordingly, the defendants would not have been able to anticipate that those claims might follow from the facts alleged by the plaintiff in the original complaint. Therefore, the court concludes that the amendments to the complaint alleging unlawful arrest and imprisonment, denial of equal protection, malicious prosecution, and malicious harassment, do not relate back to the filing of the original complaint, and therefore, they are time barred by the applicable one-year statute of limitations in Tenn. Code Ann. § 28-3-104. Accordingly, defendants' motion to dismiss will be **GRANTED** as to those claims.

23

## Motion for Clarification of Parties

Claiborne County contends that named defendants Ernie Womack, Robert Chadwell, John McMurry, David Breeding and Randy Bullen are not properly before the court because plaintiff has not presented evidence that these defendants were properly served in the state court action prior to removal to this court. Plaintiff has not submitted evidence showing that these individuals were served with process, nor has plaintiff responded to the County's motion. Pursuant to LR 7.2, plaintiff's failure to respond will be deemed a waiver of any opposition to the relief sought. Accordingly, because plaintiff has failed to serve these individuals within the time limits set by Fed.R.Civ.P. 4(m) and this court, the County's motion is **GRANTED**, whereby Ernie Womack, Robert Chadwell, John McMurry, David Breeding and Randy Bullen are hereby **DISMISSED** as defendants in this action.

## Conclusion

For the reasons stated above, the motion for summary judgment filed by Harry Shultz, in his individual capacity [Docs. 21,68] is **GRANTED;** the motion for summary judgment filed by Claiborne County [Docs. 15, 62] is **GRANTED IN PART AND DENIED IN PART;** the motion for summary judgment filed by Randy Richards, in his individual capacity [Docs. 18, 65] is **GRANTED IN PART AND DENIED IN PART;** and the defendant's motion to dismiss plaintiff's claims for false arrest, denial of equal protection, malicious prosecution and malicious harassment [Doc. 57] is **GRANTED**.

Plaintiff may proceed to trial on her claims of failure to train, assault and battery, intentional infliction of emotional distress, and negligence.

Ernie Womack, Robert Chadwell, John McMurry, David Breeding, Randy Bullen and Don Allen are **DISMISSED** as defendants in this action.

Defendants' motion to strike plaintiff's response to their motions for summary judgment [Doc. 32] is **DENIED**; defendants' motion to strike plaintiff's affidavits [Doc. 40] is **DENIED**; defendants' motion to strike plaintiff's expert witnesses [Doc. 42] is **DENIED**; and defendants' motion to dismiss for failure to prosecute [Doc. 44] is **DENIED.**

**IT IS SO ORDERED.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge